**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ERIC TERCERO,

Plaintiff,

v. Case No. 2:25-cv-00661-KWR-GBW

CASA AUTOPLEX,

Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ABRITRATION AND STAY FEDERAL COURT LITIGATION**

**THIS MATTER** comes before the Court on Defendant's Motion to Compel Arbitration and Stay Federal Court Litigation. Mot. Compel Arbitration and Stay Federal Ct. Litigation, Doc. 13. This matter arises from alleged employment discrimination and related claims Plaintiff asserts against Defendant. *See generally* Compl., Doc. 1. Defendant argues that the matter should be compelled to arbitration in accordance with an agreement between Plaintiff and Defendant. *See generally* Mot. Specifically, Defendant argues that (1) the parties entered into a valid agreement to arbitrate and (2) the parties agreed to allow the arbitrator to determine whether Plaintiff's claims are arbitrable, and (3) in the alternative, Plaintiff's claims fall within the arbitration agreement. *Id.* Plaintiff failed to respond to Defendant's Motion. *See* Notice of Br. Complete, Doc. 17.

Having reviewed Defendant's briefing and the applicable law, the Court finds that Defendant's Motion is well-taken and, therefore, is **GRANTED**.

**BACKGROUND**

Plaintiff, who proceeds pro se, was employed by Defendant from July 2021 until March 6, 2024. Compl. at 7. Plaintiff alleges that he disclosed in December 2023 a qualifying medical condition to Defendant, which required periodic medical appointments. *Id.* at 10. In January 2024,

Plaintiff alleges, a new supervisor was assigned who "disregarded" his "previously respected medical needs." *Id.* During the period of January 2024 to March 6, 2024, Plaintiff purports he suffered "escalating discrimination, denial of accommodation, and retaliation related to [his] disability and medical needs." *Id.* On March 6, 2024,[1] Plaintiff alleges that Defendant wrongfully terminated him "under a false claim of being a 'no-call, no-show,' despite having communicated with [his] supervisor in advance." *Id.* Plaintiff further alleges a series of post-termination misconduct by Defendant. *Id.* at 10–11. Ultimately, Plaintiff asserts claims under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act, the Family and Medical Leave Act ("FMLA"), and the New Mexico Human Rights Act ("NMHRA"). *Id.* at 9. Plaintiff's total requested relief amounts to $3 million. *Id.* at 13.

As a condition of his employment, Plaintiff signed an arbitration agreement ("the Agreement") on September 19, 2023. Mot. at 3–4; *Id.* 13-2 at 27. The Agreement contains numerous provisions; one relevant provision incorporates the most current version of the AAA's Commercial Arbitration Rules. *Id.* at 4; *Id.* 13-2 at 14–15. The AAA Commercial Arbitration Rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction." *Id.* 13-3 at 30–31. Nevertheless, the written scope of covered disputes in the Agreement is broad:

> "Dispute" is understood to be broadly and liberally defined and interpreted, whether in the singular or plural, and means: (a) all claims, disputes, or issues of any kind or nature which exist at the time of this Policy/Agreement or arise after the effective date of the Policy/ Agreement, and which relate to or arise out of the application/ employment/assignment of the Applicant/Employee by the Company (including without limitation any claim of constructive termination, any benefits-related claim, or any related claim against an individual Applicant/Employee of Company); (b) all Company Disputes against the Applicant/Employee or Applicant/Employee Disputes against Company in relation to any issue related to

[1] Plaintiff confusingly states first that he was terminated on March 6, 2024, Compl. at 7, yet later contradicts the alleged year by asserting Defendant terminated him on March 6, 2025, *id.* at 10. For the purpose of the background section, the Court interprets Plaintiff's later statement about the termination date as an inadvertent misstatement.

> Applicant/Employee's application, employment, treatment during employment, discipline, or separation, unless expressly and specifically excluded elsewhere as set forth in this document – and which is understood to include, without limitation: (i) the validity of this Policy/Agreement; (ii) the enforcement of this Policy/ Agreement's financial terms; (iii) all Federal, State, and local common law, contractual or statutory claims, such as claims for compensation, wage and hour violations; violation of discrimination, harassment, retaliation, fair employment, human rights, and civil rights laws, such as, by way of example only, claims brought under the Texas Commission on Human Rights Act; the Texas Labor Code; the Civil Rights Acts of 1991, as amended; the Age Discrimination in Employment Act; the Older Workers' Benefits Protection Act; the Lilly Ledbetter Act, the Patient Protection and Affordable Care Act, the Fair Labor Standards Act; the Americans with Disabilities Act; the Americans with Disabilities Act Amendments Act; the Family Medical Leave Act; the Genetic Non-Discrimination Act of 2008; the National Labor Relations Act; . . .

*Id.* 13-2 at 9–10. On June 4, 2026, Defendant filed the instant Motion.[2] *See generally* Mot. Plaintiff did not respond.

**LEGAL STANDARD**

Under the Federal Arbitration Act ("FAA"), agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). To that end, the Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements," and any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021) (quoting *Howsam v. Dean Witter Reynalds, Inc.*, 537 U.S. 79, 83 (2002) and *Spahr v. Secco*, 330 F.3d 1266, 1269-70 (10th Cir. 2003)). "The FAA thereby places arbitration agreements on an equal footing

---

[2] The Court notes that Defendant's Motion also maintains that Plaintiff misidentifies Defendant as "Casa Autoplex," and that its correct name is "Casa Crosses, LLC d/b/a Casa Ford Lincoln of Las Cruces." Nonetheless, Defendant uses the name "Casa Autoplex" in its caption and does not seek to amend the label.

with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center*, 561 U.S. at 67–68 (internal citations omitted).

The FAA establishes mechanisms by which courts can implement arbitration agreements:

> Under § 3, a party may apply to a federal court for a stay of the trial of an action "upon any issue referable to arbitration under an agreement in writing for such arbitration." Under § 4, a party "aggrieved" by the failure of another party "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement."

*Rent-A-Center*, 561 U.S. at 68 (quoting 9 U.S.C. §§ 3–4).

"Before a federal judge may stay proceedings pending arbitration, however, he must be satisfied that the issues involved in the suit are referable to arbitration under the agreement between the parties." *Dumais v. Am. Golf Corp.*, 150 F. Supp. 2d 1182, 1190 (D.N.M. 2001). The analysis is two-fold. *Haverty v. UnitedHealth Grp., Inc.*, No. 25-cv-02447-NYW-NRN, 2026 WL 3043721, at *3 (D. Colo. Feb. 27, 2026) (unpublished). "The Court must first determine if there is a valid agreement to arbitration and then decide whether the particular dispute falls within the scope of that agreement." *Coxcom, Inc. v. Egghead Telecom, Inc.*, No. 08-CV-698-TCK-PJC, 2009 WL 4016629, at *4 (N.D. Okla. Sep. 11, 2009) (unpublished) (citing *AT & T Techs. v. Commc'ns Workers of Am.,* 475 U.S. 643, 648–49 (1986). In determining these two inquiries, the Court "must operate under a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal citations omitted).

"As in any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute, and determining intent is a question of law for the court." *Dumais*, 150 F. Supp. 2d at 1190 (citing *Armijo v. Prudential Ins. Co.,* 72 F.3d 793, 797 (10th Cir.

1995)). "State law principles of contract formation govern . . . whether an agreement to arbitrate has been reached." *Id.* (citing *Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279, 1287 (10th Cir. 1997)).

Courts treat motions to compel arbitration similarly to motions for summary judgment:

> the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith.

*Clements v. Alto Trust Co.*, 685 F. Supp. 3d 1249, 1257 (D.N.M. 2023) (quoting *Waltrip v. Pilot Travel Ctrs.*, No. 21-642 GBW/KRS, 2022 WL 2192892, at *2 (D.N.M. June 17, 2022) (unpublished)). "[E]vidence need not be submitted in a form that would be admissible at trial but its content or substance . . . must be admissible." *Id.* (quoting *Waltrip*, 2022 WL 2192892, at *2).

Additionally, parties can assent to arbitrate "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69. Finally, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dumais*, 150 F. Supp. 2d at 1190 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983)).

## DISCUSSION

The Court finds Defendant's arguments well-taken. Plaintiff and Defendant entered a valid arbitration agreement, and the Agreement appropriately grants the arbitrator the ability to determine if Plaintiff's claims are arbitrable. Alternatively, the Agreement's language is broad, encompassing Plaintiff's claim, and so demanding arbitration.

### I. **The Agreement constitutes a valid arbitration agreement between Plaintiff and Defendant.**

"In the Tenth Circuit, and in the courts of New Mexico, the 'existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked.'" *Parrish*

*v. Valero Retail Holdings, Inc.*, 727 F. Supp. 2d 1266, 1273 (D.N.M. 2010) (quoting *Avedon,* 126 F.3d at 1287). "The existence of an agreement to arbitrate 'is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Avedon*, 126 F.3d at 1283 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995)). "[I]n deciding whether there is an enforceable agreement to arbitrate, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Vernon v. Qwest Commc'n Int'l, Inc.*, 857 F. Supp. 2d 1135, 1142 (D. Colo. 2012) (quoting *First Options of Chicago*, 514 U.S. at 944)). "Like other contracts . . . [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent–A–Center*, 561 U.S. at 68 (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681 (1996)).

This Court has previously stated that

> [u]nder New Mexico law, a contract is legally enforceable if it is "factually supported by an offer, an acceptance, consideration, and mutual assent." To be valid and enforceable, mutual consideration must support the arbitration agreement between Parrish and Valero. Under New Mexico law, "you either have consideration or you do not, and the amount of consideration is not an issue."

*Parrish*, 727 F. Supp. 2d at 1276–77 (quoting *Garcia v. Middle Rio Grande Conservancy Dist.,* 918 P.2d 7, 10 (N.M. 1996) and *Richards v. Allianz Life Ins. Co. of N. Am.,* 62 P.3d 320, 325 (N.M. Ct. App. 2002)) (cleaned up).

Here, Plaintiff and Defendant validly entered an arbitration agreement. As Defendant asserts, "[Plaintiff's] offer of employment was conditioned on his agreement to arbitrate disputes with [Defendant]." Mot. at 3. The Agreement reflects a valid signature by Plaintiff and an authorized representative of Defendant on September 19, 2023. *Id.* 13-2 at 27. The Agreement is lengthy and contains various provisions that mandate arbitration over dispute between Plaintiff

and Defendant. *See generally id.* The Agreement was part of a valid employment contract, supported by offer, consideration, and acceptance. Indeed, Plaintiff agreed that "[t]he mutual promises . . . to arbitrate differences . . . provide adequate consideration . . . for the enforcement of this Policy/Agreement." *Id.* 13-2 at 20. Moreover, Plaintiff does not provide any evidence to invalidate the contract such as fraud, duress, or unconscionability.

## II. **<u>The Agreement validly grants the arbitrator the ability to determine if Plaintiff's claims are arbitrable</u>.**

"An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 69. Thus, arbitration agreements can properly dedicate to the arbitrator not only the claims but also the ability to determine if the claims are within its purview.

Here, the Agreement contains a valid provision that delegates to the arbitrator the question of arbitrability of Plaintiff's claims. The Agreement incorporates by reference the most-current version of the AAA's Commercial Arbitrations Rules. *See id.* 13-2 at 14–15. In turn, the AAA's Rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." *Id.* 13-3 at 30. Therefore, the second prong inquiry can be properly answered by the arbitrator itself.

## III. **<u>Alternatively, the Agreement's plain text broadly authorizes arbitration over Plaintiff's claims</u>.**

Nevertheless, the plain text of the Agreement facially encompasses Plaintiff's claim, definitively and affirmatively answering the second prong inquiry. This Court has previously

exercised its power to determine if a plaintiff's claims fall within an arbitration agreement. *See, e.g.*, *Laurich v. Red Lobster Rests., LLC*, 295 F. Supp. 3d 1186, 1220–21 (D.N.M. Nov. 8, 2017). The Agreement provides definitions for terms, including "Dispute":

> "Dispute" is understood to be *broadly* and *liberally* defined and interpreted, whether in the singular or plural, and means: (a) *all claims, disputes, or issues of any kind or nature* which exist at the time of this Policy/Agreement or arise after the effective date of the Policy/ Agreement, and which relate to or arise out of the application/ employment/assignment of the Applicant/Employee by the Company (including without limitation any claim of constructive termination, any benefits-related claim, or any related claim against an individual Applicant/Employee of Company); (b) all Company Disputes against the Applicant/Employee or Applicant/Employee Disputes against Company in relation to any issue related to Applicant/Employee's application, employment, treatment during employment, discipline, or separation, unless expressly and specifically excluded elsewhere as set forth in this document – and which is understood to include, without limitation: (i) the validity of this Policy/Agreement; (ii) the enforcement of this Policy/ Agreement's financial terms; (iii) *all Federal, State, and local common law, contractual or statutory claims*, such as claims for compensation, wage and hour violations; violation of discrimination, harassment, retaliation, fair employment, human rights, and civil rights laws, such as, by way of example only, claims brought under the Texas Commission on Human Rights Act; the Texas Labor Code; the Civil Rights Acts of 1991, as amended; the Age Discrimination in Employment Act; the Older Workers' Benefits Protection Act; the Lilly Ledbetter Act, the Patient Protection and Affordable Care Act, the Fair Labor Standards Act; the Americans with Disabilities Act; the Americans with Disabilities Act Amendments Act; the Family Medical Leave Act; the Genetic Non-Discrimination Act of 2008; the National Labor Relations Act; . . .

*Id.* 13-2 at 9–10 (emphasis added). Beyond Plaintiff's claims expressly enumerated in the Agreement's definitional provision, including his claims under the ADA and FMLA, the definition capaciously fits all of Plaintiff's claims. Therefore, the Court is satisfied the broad definition of "dispute" in the Agreement authorizes arbitration over all of Plaintiff's claims.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration and Stay Federal Court Litigation (Doc. 13) is hereby **GRANTED** for the reasons described in this

Memorandum Opinion and Order. Respondent/Defendant shall file a status report on the arbitration within 90 days.

__/S/___________________________
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE